UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| GEORGE NAPOLEON MOSES, | ) | C/A No.: 4:14-cv-2894-RBH-TER |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| | ) | |
| WARDEN JOSEPH McFADDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

     Petitioner, George Napoleon Moses  (Petitioner), appearing *pro se*, filed his

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on July 21, 2014.

Respondent filed a motion for summary judgment on October 18, 2014, along with

a return and memorandum. (Docs. #8 and 9). The undersigned issued an order filed

October 20, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

advising Petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. (Doc. #10). After receiving an

extension of time to respond, Petitioner filed a response on November 10, 2014. (Doc.

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c),
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

#12).

## PROCEDURAL HISTORY

The procedural history as set forth by the Respondent has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is currently incarcerated in Lieber Correctional Institution pursuant to an order of commitment from the Clerk of Court of Orangeburg County. An Orangeburg County grand jury indicted Petitioner in December 2006 for armed robbery (2006-GS-38-2067) and murder (2006-GS-38-2068). Attachment 1, PCR Appendix at 748–53. On February 9, 2009, Petitioner proceeded to trial on the charges before the Honorable James C. Williams, Jr. and a jury. Attachment 1, PCR App. at 1–593. Public Defenders Doug Mellard and Margaret Hinds represented Petitioner at trial. Attachment 1, PCR App. at 1. Assistant Solicitors Don Sorenson and Charlie Johnson represented the State. Attachment 1, PCR App. at 1. The jury returned a verdict of guilty on the armed robbery charge and of guilty to the lesser - included offense of voluntary manslaughter. Attachment 1, PCR App. at 577–78. On February 12, 2009, Judge Williams sentenced Petitioner to incarceration for life without parole on each of the charges. Attachment 1, PCR App. at 585–92, 750, 753.

Trial counsel filed a timely notice of appeal on Petitioner's behalf. Attachment

2, Notice of Appeal (Direct Appeal). On December 15, 2009, Elizabeth A. Franklin

-Best, Appellate Defender with the South Carolina Commission on Indigent Defense,

Division of Appellate Defense, filed a brief raising the following issue:

> The Sixth Amendment guarantees that in all criminal
> prosecutions "the accused shall enjoy the right to . . . have
> the Assistance of Counsel for his defense." Was Moses
> denied his right to counsel when the police, after Moses
> invoked his right to counsel, initiated contact with him the
> next day and continued to interrogate him, resulting in
> statement [sic] that the State then introduced against him
> during its case-in-chief?

Attachment 1, PCR App. at 709–20.  The State filed a response brief. Attachment 1,

PCR App. at 721–45.

In an unpublished opinion filed August 30, 2010, the South Carolina Court of

Appeals affirmed Petitioner's conviction. Attachment 1, PCR App. at 746–47. The

court issued the remittitur on September 15, 2010. Attachment 3, Remittitur (Direct

Appeal). Petitioner filed an application for post-conviction relief (PCR) on October

29, 2010. Attachment 1, PCR App. at 596–609. In his application Petitioner asserted

that he was being held in custody unlawfully for the following reasons:

10. (A.)     Ineffective Assistance of trial counsel.
10. (B.)     Ineffective Assistance of Appellate counsel
10. (C.)     Trial judge erred in  not instructing involuntary
             manslaughter or Accident.
10. (D.)     Trial judge erred in only giving Davis charge, when
             instructing the jury on self- defense.
10. (E.)     Trial judge erred in amending defective indictment.

10. (F.)     Trial judge erred in not granting defendants counsel motion for a direct verdict to the charges of Armed Robbery and Murder.

10. (G.)     Trial judge erred in not charging the lesser include offenses of Robbery or larceny.

10. (H.)     Trial judge erred in charging voluntary manslaughter to the jury.

Attachment 1, PCR App. at 603. In support of these claims, Petitioner provided the following, quoted verbatim:

11. (A.) 1.   Trial counsel failed to provide expert witness to testify against states theory of facts in defendant case, as to victims cause of death, and aledged latent by the defendant.

    2.   Trial counsel failed to obtain victims medical records, which would have shown pre-existing heart condition and durg abuse as possible causes of death to victim.

    3.   Trial counsel failed to object to jury charge of voluntary manslaughter, thereby, shifting the burden of proof of intent to the defendant.

    4.   Trial counsel failed to request additional jury instruction that state must disprove self defense by a reasonalbe doubt.

    5.   Trial counsel failed to request additional instructions to the jury on the use of deadly force and retreat in self defense.

    6.   Trial counsel failed to call wittness with testimony helpful to defendants defense of self defense. Officer Todd Williams of the Orangeburg Shirreffs Office gave a statement as to the injurys and condition of defendant which would have aided the jury in determining defendant plea of self defense.

    7.   Trial counsel was ineffective for advising defendant to waive his fifth Amendment right not to testify at trial.

    8.   Trial counsel was ineffective for failing to request a jury instruction to the lesser included offenses of Armed Robbery.

    9.   Trial counsel was ineffective for failing to motion the court for a dismissal of the defective indictment before trial.

    10.   Trial counsel was ineffective for failing to investigate DNA evidence which was recoverd from crime scene, which showed multiple person(s) at scene of the crime.

4

11. Trial counsel was ineffective for failing to file for interlocutory appeal after Deno Hearing.

12. Trial counsel was ineffective for failing to introduce the autopsy report into evidence.

11. Trial counsel was ineffective for failing to object to the introduction of statements and testimony pursuant to 19-1-90 and 19-1-80 and 8-15-50 of South Carolina Code of Laws 1976.

11. (B.)1. Appellate counsel failed to include all properly preserved issues for Appellate review by the S.C. Court of Appeals.

A. Appellate counsel failed to include issue of defective indictment that was amended by trial judge.

B. Appellate counsel failed to include the issue of trial judges denial of defendants motion for a direct verdict as to the offenses of Murder and Armed Robbery.

C. Appellate counsel failed to petition the S.C. Supreme Court for a petition for certiorari after court of appeal decision.

11. (C.)1. There was testimony from the defendant and Dr. Ross to warrant the trial judge to instruct the jury to involuntary manslaughter and/or accident in the death of the victim.

11. (D.)1. Trial judge should have given addition jury instruction on the use of deadly force in the defense of one's self.

11. (E.)1. Trial judge erred in amending defective indictment that was presented to the Grand jury on false information. Over defendants counsel objection that it be resubmitted to the Grand jury.

11. (F.) 1. There was no corpis delicti as to the Armed Robbery as alleged only the prosecutors statement in his closing.

11. (G.) 1. The trial judge erred in his instruction to the jury by not charging the lesser included offenses of Robbery and Larceny on the indictment that was submitted to the jury during its deliberation.

11. (H.) 1.   There was no evidence to warrant a instruct to voluntary manslaughter and by instructing the jury to such, shifted the burden of having to prove self defense to the defendant.

Attachment 1, PCR App. at 603–09. (Quoted verbatim so included errors).

The State made its return to the application on May 3, 2011. Attachment 1, PCR App. at 610–17.

An evidentiary hearing was convened on Wednesday, November 30, 2011, before the Honorable Diane Schafer Goodstein. Attachment 1, PCR App. at 618–94. Petitioner was present and represented by Carl B. Grant at the hearing. Attachment 1, PCR App. at 618. In an order dated March 26, 2012, Judge Goodstein denied and dismissed with prejudice Petitioner's application. Attachment 1, PCR App. at 105–19.

PCR counsel filed a notice of appeal on Petitioner's behalf on June 6, 2012. Attachment 4, Notice of Appeal (PCR Appeal). On February 14, 2013, Lanelle Cantey Durant, an Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a Petition for Writ of Certiorari, raising the following issue:

Did the PCR court err in failing to find trial counsel ineffective for not obtaining the victim's medical records and for failing to obtain an independent expert to review those medical records in conjunction with the autopsy report which indicated that the victim had pre-existing heart problems and cocaine in his sytem?

Attachment 5, Petition for Writ of Certiorari (PCR Appeal).

6

The State filed its return to the petition on April 18, 2013. Attachment 6, Return to Petition for Certiorari (PCR Appeal). In an order dated June 18, 2014, the South Carolina Court of Appeals denied the petition. Attachment 7, Order dated June 18, 2014 (PCR Appeal). The court issued a remittitur on July 7, 2014. Attachment 8, Remittitur (PCR Appeal).


## HABEAS ALLEGATIONS

Petitioner filed his federal habeas petition on January 24, 2014, in which he raised the following allegations, quoted verbatim:

> GROUND ONE:  Violation of Petitione[r's]  Fifth, Sixth and Fourteenth Amendme[nt].
>
> Supporting Facts:  Petitioner was denied his rigth(sic) to counsel when the police, after petitioner invoked his right to counsel, initiated contact with him the next day and continued to interrogate him, resulting in a statement that the state then introduced and used against him during its case-in-chief.
>
> GROUND TWO:  Violation of Petitioners Sixth Amendment rights.
>
> Supporting facts:  Trial Counsel was ineffective for not obtaining the victims medical records, (failure to investigate), and for failing to obtain and independent expert to review those medical  records in conjunction with the autopsy report which indicated that the victim had a preexisting heart problem and cocaine in his system.

(Petition).

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively

8

unreasonable." <u>McHone v. Polk</u>, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## **PROCEDURAL BAR**

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also
> the finality of those decisions, by forcing the defendant to litigate all of
> his claims together, as quickly after trial as the docket will allow, and
> while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate
> unless the defendant succeeds in showing both "cause" for
> noncompliance with the state rule and "actual prejudice"
> resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Syke s, 433 U.S. at 84 (1977)).

See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure

to raise the claim in the state courts, and (2) actual prejudice resulting from the failure,

a procedural bar can be ignored and the federal court may consider the claim. Where

a Petitioner has failed to comply with state procedural requirements and cannot make

the required showing(s) of cause and prejudice, the federal courts generally decline

to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).


## **ANALYSIS**

## **Ground One**

10

In Ground One, Petitioner argues a violation of his Fifth, Sixth, and Fourteenth Amendments when the police continued to interrogate him after he requested counsel. Petitioner asserts that the interrogation without counsel resulted in him making a statement that the state introduced and used against him at trial. First, there was testimony by the Sheriff's officers, Shumpert and Rodriguez during the <u>Jackson v. Denno</u> hearing that Petitioner gave an oral statement and a written statement after advising him of his <u>Miranda</u> warnings and Petitioner signing the advice of rights form. (12-15; 26-29). Shumpert testified that Petitioner gave an oral statement on September 29, 2006, after being given his <u>Miranda</u> warnings and advice of rights. (12-15). Petitioner asserts that he did not make an oral statement on September 29, 2006, and had asked for an attorney. Shumpert and Rodriguez testified that Petitioner was given his rights again on September 30, 2006, and waived those rights before giving a written statement. Petitioner asserts that he asked for an attorney the next day also but was denied and told "you don't need a lawyer because they we're not going to charge you with murder or anything, we're just trying to help you." (Tr. 42). However, the trial judge found that the oral statement Petitioner denied making was freely and voluntarily made after signing a waiver of rights form. Thus, the trial judge found that the jury would decide whether he made it or not based on credibility. (Tr. 55-56).  As to the written statement, the trial judge found that it was freely, voluntarily, knowingly

and intelligently given after he was advised of his rights and waived those rights. Therefore, the trial judge found that both statements would be admitted into evidence and it would be left to the jury to determine what, if any, weight they would be given. (Tr. 57-58). Petitioner argues in his federal habeas petition that he did not make an oral statement on September 29, 2006, and that he asked for an attorney before making any statement but was denied in violation of his right to counsel.

Respondent asserts that the issue of a Sixth Amendment violation was not raised to and ruled upon by the trial court, and, therefore, was not preserved for appellate review. As to the issue asserting that Petitioner's Fifth Amendment right to counsel was violated, Respondent argues that even though the claim was preserved at the trial level, appellate counsel failed to pursue the direct appeal after the court of appeals issued an unpublished opinion affirming Petitioner's conviction. As a result, Respondent argues that all of Ground One is procedurally barred from federal habeas review.

On direct appeal, Petitioner raised the following issue:

> The Sixth Amendment guarantees that in all criminal prosecutions "the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." Was Moses denied his right to counsel when the police, after Moses invoked his right to counsel, initiated contact with him the next day and continued to interrogate him, resulting in statement [sic] that the State then introduced against him during its case-in-chief?

Since a Sixth Amendment argument was not raised at trial and ruled upon, the issue was procedurally barred. However, the Court of Appeals did make a ruling with regard to the Fifth Amendment. While Respondent argues that it is procedurally defaulted since the Court of Appeals' decision was not raised to the South Carolina Supreme Court, this court finds that it is not procedurally defaulted. In State v. McKennedy, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." 348 S.C. 270, 559 S.E.2d 850, 854 (S.C.2002) (citing In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (S.C.1990)). Therefore, the issue will be addressed .

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." In Miranda v. Arizona, the United States Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. 384 U.S. 436, 458, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To ensure the Fifth Amendment privilege against self-incrimination is not undermined in custodial interrogations, the Supreme Court established certain

13

procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. See id. at 444. Specifically, Miranda requires that before any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. See id. "The Court's fundamental aim in designing the Miranda warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.' " Colorado v. Spring, 479 U.S. 564, 572, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting Miranda, 384 U.S. at 469).

The Supreme Court established an exclusionary rule, holding that statements obtained in violation of Miranda must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment to ensure that law enforcement officials comply with Miranda' s requirements. Oregon v. Elstad, 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The failure to administer Miranda warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. Id. at 306–07.

A suspect may waive his Miranda rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation,

"provided the waiver is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 U.S. at 444; <u>see</u> <u>Spring</u>, 479 U.S. at 572; <u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. <u>See</u> <u>Spring</u>, 479 U.S. at 573. The question of whether an accused has validly waived his <u>Miranda</u> rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran</u>, 475 U.S. at 421; <u>see</u> <u>Spring</u>, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,' " including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Moran</u>, 475 U.S. at 421 (<u>quoting</u> <u>Fare v. Michael C.</u>, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The ultimate determination of a valid <u>Miranda</u> waiver is a mixed question of law and fact not subject to the presumption of correctness, <u>Boggs v. Bair</u>, 892 F.2d

1193, 1199 (4th Cir.1989) (citing <u>Miller v. Fenton</u>, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). However, the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e) (1). Further, in a federal habeas corpus proceeding, the state court's disposition of Petitioner's <u>Miranda</u> claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 402–03.

In this case, the South Carolina Court of Appeals issued an unpublished opinion filed August 30, 2010, affirming Petitioner's convictions and sentence. In the opinion, the South Carolina Court of Appeals held as follows:

> George Moses was convicted of voluntary manslaughter and armed robbery. The trial court sentenced him to life imprisonment. On appeal, Moses argues the trial court denied him his Fifth Amendment right to counsel by admitting a written statement he gave the police after he invoked his right to counsel. We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: <u>State v. Pagan</u>, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the conclusions of the trial court either lacks evidentiary support or are controlled by an error of law.") (citation omitted); <u>State v. Rochester</u>, 301 S.C. 196, 201, 391 S.E.2d 244, 247 (1990) (holding the admission of improper evidence is harmless when evidence is merely cumulative

16

> to other evidence); <u>State v. Jarrell</u>, 350 S.C. 90, 100-01,
> 564 S.E.2d 362, 368 (Ct. App. 2002) (Finding harmless
> error where the statement was almost identical to the
> testimony of the three witnesses at trial.)

(Tr. 746).

The evidence of record establishes that Petitioner signed a waiver of rights form, which included a recitation of <u>Miranda</u> warnings. The trial court conducted a hearing pursuant to <u>Jackson v. Denno</u>, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Lieutenant James Shumpert testified that he advised Petitioner of his <u>Miranda</u> warnings, and Petitioner signed the form indicating he understood his rights. (Tr. 12-13). At the bottom of the document of the advisement of rights was a waiver of right which Shumpert testified he also went over with Petitioner who signed that he understood and waived his rights and did not want a lawyer at that time. (Tr. 14). Shumpert testified that Petitioner first stated that he had not been at the deceased's house but later rescinded the statement and said he had gone to the deceased's house to purchase drugs. The following day, Shumpert testified that Petitioner gave a written statement. (Tr. 15-16, 349).  Deputy Roman E. Rodriguez testified that he was present when the advice of rights form was reviewed with Petitioner and signed it as a witness. (Tr. 26-27). Rodriguez also testified that he took down the written statement in his handwriting after Petitioner requested him to write it for him on September 30, 2006.  Petitioner initialed on the form that the handwriting was not his but the words

17

were his words. (Tr. 28). The court concluded as follows:

> Alright, well, the evidence is that the officer testified that he gave it. I mean, that's some evidence for the jury to weigh, and ultimately it will be for the jury to decide where he made each of these statements and if he made each one of them whether each one of them was made freely, voluntarily, knowingly, and intelligently. And of course, I'll instruct the jury if they find that he didn't make them they wouldn't consider them, if they find they weren't made freely and voluntarily they wouldn't consider them.

(Tr. 55-56). The Court found that both statements[2] were freely, voluntarily, knowingly and intelligently given by the Petitioner after he was advised of his rights and waived those rights. The court found that both statements would be admitted into evidence and it would be up to the jury to determine what, if any, weight that they would be given. (Tr. 56-58).

The trial court found Petitioner had given his statements freely, voluntarily, knowingly, and intelligently after he was advised of his rights and waived those rights. Because the Court of Appeals' decision affirming the convictions and sentences is supported by the record and the relevant caselaw, Petitioner is unable to establish that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this ground is without merit and

---

[2] The oral statement and written statement.

18

summary judgment should be granted with respect to this issue. Therefore, it is recommended that Ground One be dismissed and Respondent's motion for summary judgment granted.

**Ground Two**

In Ground Two, Petitioner alleges ineffective assistance of counsel for failure to obtain the victim's medical records and for failure to hire an expert to review the records. Respondent argues that the PCR court's denial of this claim was reasonable and should not be disturbed.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

19

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

20

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  (Emphasis added.)

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000), *quoting* Strickland at 694, the Court held that "[to] establish ineffectiveness, he [a defendant] 'must show that counsel's representation fell below an objective standard of reasonableness, and to establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Thus, the Court confirmed that the correct standard for judging ineffective assistance of claims is the Strickland standard.

This issue was raised and ruled upon by the PCR court and raised in the PCR appeal. In the order of dismissal, the PCR court held the following:

> Applicant states that Counsel should have provided an expert as to cause of death as well as medical records in order to create doubt as to how the Victim died. Applicant speculated that an expert and/or use of medical records could have attributed Victim's death to a heart condition or drug use or could have assisted in his theory of self defense. Counsel testified that he did utilize an expert, Dr. Conradi, to review the autopsy report which concluded that Victim died from head trauma. According to Counsel, Dr. Conradi arrived at the same conclusion as the State's

> expert. I find that Counsel's performance was well within reasonable professional norms. Further, Applicant has failed to demonstrate prejudice. <u>Lorenzen v. State</u>, 376 S.C. 521, 530, 657 S.E.2d 771, 776–777 (2008) (merely speculative that allegedly favorable expert witnesses would have aided in defense).

Attachment 1, PCR App. at 699.

The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); <u>Williams, supra</u>. A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). <u>Evans v. Smith</u>, <u>supra</u>; <u>Wilson v. Moore</u>, <u>supra</u>. The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are supported by the record. Trial counsel testified that he received the autopsy report and had an expert review the documents. The expert, Dr. Conradi, reached the same conclusion as the state's pathologist, that the death was cause by a beating or blunt force trauma. (Tr. 664). Petitioner's argument that an expert could have reviewed the medical records and concluded that a heart condition or drug use contributed to the victim's death was only speculation. Petitioner did not present any evidence or testimony at the PCR hearing to substantiate his speculation while two experts had previously concluded that the trauma to the head caused the

death.  Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted on Ground Two.

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #8) be granted and the petition be dismissed without an evidentiary hearing.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
January 23, 2015                            United States Magistrate Judge
Florence, South Carolina


**The parties' attention is directed to the important information on the attached notice**.

23